**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES H. McGUCKIN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | Case No. 15-20867 |
| _____ | ) | |
| BANGOR SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 16-_____ |
| v. | ) | |
| | ) | |
| JAMES H. McGUCKIN, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**
**PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) AND 523(c)(1),**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE 4007, 7001(6),**
**7003, AND 7008(a), AND D. ME. LBR 7008-1**

NOW COMES Plaintiff, Bangor Savings Bank (the "**Bank**"), by and through undersigned counsel, and respectfully requests that this Court determine that the sums set forth below, which are due to the Bank from the above-captioned debtor, James H. McGuckin ("**Debtor**"), are nondischargeable, pursuant to 11 U.S.C. §§ 523(a)(4) and 523(c)(1); and pursuant to Federal Rules of Bankruptcy Procedure 4007, 7001(6), 7003, and 7008(a), and D. Me. LBR 7008-1, and as grounds therefore, Plaintiff states as follows:

**Jurisdiction and Venue**

1. This Adversary Proceeding is brought pursuant to the statutes and Rules set forth above and in connection with Debtor's Chapter 7 case under Title 11 of the United States Bankruptcy Code (the "**Code**"), Case No. 15-20696, now pending before the United States Bankruptcy Court for the District of Maine.

2. This Court has jurisdiction over this Adversary Proceeding pursuant to 11 U.S.C. §§ 523 and 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

4. Venue is proper in the District of Maine pursuant to 28 U.S.C. §§ 1408 and 1409.

### Parties

5. The Bank is a corporation organized under the laws of the United States of America, having its principal place of business in the city of Bangor, Penobscot County, Maine.

6. Debtor is an individual residing in the Hamlet of Mount Sinai, Town of Brookhaven, Suffolk County, State of New York.

### Facts

7. On December 14, 2015, (the "**Petition Date**") Debtor filed a voluntary petition for relief under Chapter 7 of Bankruptcy Code in this Court.

8. Prior to the Petition Date, the Debtor filed with the Maine Secretary of State Articles of Incorporation for J Mack 51 G R Corp DBA Ground Round ("J Mack").

9. According to the records of the Maine Secretary of State, J Mack is a Maine corporation in good standing, and the Debtor is the Clerk/Registered Agent.

10. Prior to the Petition Date and on or about January 30, 2015, J Mack entered into a Sublease Agreement with Zyacorp Entertainment I, LLC ("Zyacorp") in connection with a portion of property located at 779 Portland Road, Saco, Maine (the "Sublease").

11. Pursuant to the Sublease and the exhibits attached thereto, the subleased premises included approximately 2,600 square feet of restaurant space, together with certain furniture, fixtures and equipment, including restaurant equipment, located therein.

12. Prior to the Petition Date, the Bank made a certain loan ("Loan-1") to J Mack.

13. In order to induce the Bank to approve Loan-1, the Debtor, on behalf of J Mack, completed and submitted to the Bank a certain Business Loan Application and Agreement dated February 23, 2015 (the "Application"). A true and accurate copy of the Application is attached hereto as **Exhibit A** and incorporated herein by reference.

14. According to the Application, the purpose of Loan-1 was to establish a Ground Round franchise in Saco, Maine.

15. On or about March 14, 2015, the Debtor, on behalf of J Mack, entered into a Lease Contract with North Star Leasing for certain equipment (the "North Star Lease"). A true and accurate copy of the North Star Lease is attached hereto as **Exhibit B** and incorporated herein by reference.

16. On or about March 17, 2015, the Bank issued a commitment letter to the Debtor on behalf of J Mack (the "Commitment Letter"). A true and accurate copy of the Commitment Letter is attached hereto as **Exhibit C** and incorporated herein by reference.

17. Pursuant to the Commitment Letter, the proceeds from Loan-1 were to be "used to finance the startup expenses for a Ground Round Franchise."

18. As a further condition for Loan-1, the Borrower was required to provide evidence of an equity injection into the new business in an amount not less than $109,500.00 prior to closing.

19. On or about April 1, 2015, the Debtor, on behalf of J Mack, executed a Promissory Note in favor of the Bank in the original principal amount of $60,000.00 (the "Note"). A true and accurate copy of the Note is attached hereto as **Exhibit D** and incorporated herein by reference.

20. To secure Loan-1, J Mack granted the Bank a security interest in all inventory,

equipment and accounts of J Mack (the "Collateral"), pursuant to a Commercial Security Agreement (the "Security Agreement").  A true and accurate copy of the Security Agreement is attached hereto as **Exhibit E** and incorporated herein by reference.

21.	The Bank perfected its security interest in the Collateral by filing a UCC Financing Statement with the Maine Secretary of State on April 1, 2015, Filing Number 20150401109000184-46 (the "UCC").  A true and accurate copy of the UCC is attached hereto as **Exhibit F** and incorporated herein by reference.

22.	As additional security for Loan-1, the Debtor executed a Commercial Guaranty (the "Guaranty") absolutely and unconditionally guaranteeing full and punctual payment of Loan-1.  A true and accurate copy of the UCC is attached hereto as **Exhibit G** and incorporated herein by reference.

23.	J. Mack is in default of the Note, and the Debtor is in default of the Guaranty, for their failure to pay amounts due under the Note and for closing the business and ceasing operations.

24.	On or about April 12, 2016, BSB sent J Mack and the Debtor, through counsel, a Notification of Private Disposition (the "Notification").  A true and accurate copy of the Notification is attached hereto as **Exhibit H** and incorporated herein by reference.

25.	A list of the Collateral owned by J Mack is included in Schedule A attached to the Notification.

26.	In addition, prior to the Petition Date, the Bank made an overdraft protection loan ("Loan-2") to J Mack.  (Loan-1 and Loan-2 may be hereinafter referred to collectively as the "Loans").

27.	Pursuant to the terms of the Guaranty executed by the Debtor, the Debtor also

guaranteed the payment by J Mack of any and all debts, liabilities and obligations, now existing or hereafter arising or acquired, including Loan-2. True and correct copies of approval letter and Credit Line Agreement in connection with Loan-2 are attached hereto as **Exhibits I and J** and incorporated herein by reference.

## Count I
## Non-Dischargeable Debt
## 11 U.S.C. § 523(a)(4) and (c)(1)

28. The Bank repeats and realleges all allegations set forth above as if fully set forth herein.

29. On the Application, the Debtor, on behalf of J. Mack, represented that J Mack owned the Collateral, that the Collateral consisted of "restaurant furnishings, TV/sound system, kitchen equipment, furniture, computer system", and that the value of the Collateral was $140,000.00.

30. The Bank, in making the Loans to J Mack, justifiably and reasonably relied to its detriment on the false representations made by the Debtor on behalf of J Mack in connection with the Collateral and J Mack's financial condition as set forth in the Application.

31. Based on information and belief, and as set forth in Schedule A attached to the Notification sent to J Mack, the only collateral owned by J Mack and located at the premises subleased from Zyacorp consists of framed artwork, glassware, dishes, silverware and other miscellaneous kitchen and restaurant supplies, and a safe the aggregate value of which is minimal and significantly less than $140,000.00, as represented in the Application.

32. The Debtor's misrepresentations, on behalf of J Mack, in the Application were material misrepresentations made under false pretenses, made with the intent to fraudulently induce the Bank to loan money to J Mack.

- 5 -

33.     But for the Debtor's material misrepresentations made under false pretenses, false representations and with the Debtor's fraudulent intentions, the Bank would not have agreed to enter into the Loans or to provide money to J Mack and the Debtor.

34.     The Loans were procured through false representations, false pretenses and actual fraud of the Debtor and as such, the outstanding amount due on the Loans, including interest, costs and attorneys' fees owed to the Bank by the Debtor, by virtue of his Guaranty of J Mack's debt, is nondischargeable pursuant to §§ 523(a)(2)(A), and 523(c)(1) of the Code.

**WHEREFORE**, Plaintiff Bangor Savings Bank respectfully requests that this Court enter an order (i) determining that the outstanding amounts on Loan-1 and Loan-2, totaling $62,753.54 as of the Petition Date, plus interest, costs, and attorney's fees pursuant to the terms of Loan-1 and Loan-2 is non-dischargeable and (ii) granting such other and further relief as is just and proper.

Dated: April 14, 2016    By    */s/ Bruce B. Hochman*
Bruce B. Hochman, Esq.
Erica M. Johanson, Esq.
Eaton Peabody
P.O. Box 15235
Portland, ME  04112
Tel.:  (207) 274-5266
Fax:  (207) 274-5286
bhochman@eatonpeabody.com
ejohanson@eatonpeabody.com

*Counsel to Bangor Savings Bank*